ELSIE M. BAKER *vs.* WILLIAM A. WOODBRIDGE and others.

Where the subscription to a will was not made by the testatrix in the presence of the attesting witnesses, nor of either of them; neither was it acknowledged by her to them, or either of them; and to one of the attesting witnesses there was no declaration by the testatrix, or any one in her presence, that the instrument was her will; *Held* that the requirements of the statute in respect to execution were neither formally nor substantially complied with; and hence the will was erroneously admitted to probate.

THIS is an appeal from a decree of the surrogate of Columbia county admitting the will of Electa Bell, deceased, to probate. The decree bears date the 27th day of December, 1872.

It was insisted by the appellant, on the hearing before the surrogate, that the evidence failed to show a compliance with the provisions of the statute necessary to a due execution of the will by the testatrix, and that the same was improperly admitted to probate by the surrogate.

*A. Pond*, for the appellant.

I. The statutory requirements in respect to the execution of a will are specified in the statute. (2 *R. S.* 63, 64, *Edm. ed.*)

II. The evidence in this case wholly fails to show a compliance with either one of the statutory requirements. 1. The proof did not show that the will was subscribed by the testatrix, within the meaning of the statute. (*a.*) In order to the due proof of the execution of the will, the evidence should affirmatively establish the fact that it was subscribed by the testatrix before it was signed by the witnesses who attested its execution. (*Jackson* v. *Jackson*, 39 *N. Y.* 153, 161–163.) (*b.*) The testimony entirely fails to show when the testatrix signed the will, or that she signed it before the witnesses did. The evidence as to when the testatrix signed her name to the will fails to show affirmatively that it was signed

by her before the witnesses signed the will; and hence is insufficient to warrant its admission to probate, inasmuch as the burden of proving affirmatively that all the requirements of the statute have been complied with, rests on the party offering the will for probate. (*Lewis* v. *Lewis*, 1 *Kern.* 220. *Chaffee* v. *Baptist Miss. Con.*, 10 *Paige*, 85.) 2. The testatrix neither subscribed the will in the presence of each of the attesting witnesses, nor acknowledged that it was so made, to each of them, as expressly required by the statute. On the contrary, the evidence actually disproved the occurrence of either of these circumstances. (*Lewis* v. *Lewis*, 1 *Kern.* 220; *S. C.*, 13 *Barb.* 17. *Hunt* v. *Mootrie*, 3 *Bradf.* 322, 329. *Wilson* v. *Hetterick*, 2 *id.* 427, 431. *Ex parte Beers, Id.* 163. *Bagley* v. *Blackman*, 2 *Lans.* 41.) 3. The testatrix did not, either at the time of making her subscription to the will, or of acknowledging the same, (which she never made,) "declare the instrument to be her last will and testament," as required by the statute. The evidence utterly fails to show the testatrix declared "the instrument to be her last will and testament;" and the failure is fatal to the proof of the will. (*Lewis* v. *Lewis*, 1 *Kern.* 222. *Burritt* v. *Silliman*, 16 *Barb.* 198. *Remsen* v. *Brinckerhoff*, 26 *Wend.* 325. *Ex parte Beers*, 2 *Bradf.* 164. *Wilson* v. *Hetterick, Id.* 427. *Abbey* v. *Christy*, 49 *Barb.* 276. *Bagley* v. *Blackman*, 2 *Lans.* 41.) 4. The witnesses did not sign the will "at the request of the testatrix." Whatever request was made at all, was made by Saxton to the witness Wright, in the presence of Mrs. Bell; but there is no evidence that she either heard or concurred in it, otherwise than as the inference may be deduced from the occasion, and from what Saxton had previously told the witness, when he requested him to come to be a witness to the execution of the will. But that was not sufficient, as to him even; and as to Canfield, the evidence is still weaker. Indeed, there was no request at all to him in the presence of the testa-

trix. The evidence, therefore, wholly fails, within any of the cases, to show any request by the testatrix to the witnesses that they should attest the execution of the will, such as the statute required. (*See cases above cited.*)

III. If it be claimed that the attestation clause to the will furnishes any evidence at all to sustain the probate of it, we answer, 1. That clause is no evidence at all, unless one or all the witnesses to the execution of the will are dead; in which case that clause may supply the lack of evidence occasioned thereby. 2. But in this case the attesting witnesses are both alive, and swear that they did not read the attestation clause, or hear it read; nor did they know its contents; and, besides, it is flatly contradicted by both. It can, therefore, have no weight as evidence in the case. (*Chaffee* v. *Miss. Con.*, 10 *Paige*, 85.) The result is, the decree of the surrogate admitting the will to probate should be reversed; and inasmuch as it is manifest that all the evidence is now in the case bearing on the question of the due execution of the will, and that it is palpably insufficient to prove it, the surrogate should be directed to enter a decree or order denying probate of the will; and the appellant should be allowed her costs on this appeal, to be paid out of the estate.

*John Cadman,* for the respondents.

I. The statute prescribing the formalities to be observed in the execution of wills should be construed so as to secure the purposes of its enactment, and prevent the evils it was designed to remedy.

A construction should be avoided which will make the statute a snare instead of a protection. (*Gilbert* v. *Knox*, 52 *N. Y.* 125.) Nothing can be better established by evidence than that the testatrix in this case, 1st. Desired to make a will. 2d. That she desired to make it precisely as this will was made. 3d. That she took extraordinary precautions to see that this instrument

should be drawn exactly as it was drawn, and exactly in accordance with her wishes. 4th. That she intended to execute it as her will. 5th. That she believed she had done so, and lived and died in the full belief that she had executed a valid will.

II. The paper thus executed by the testatrix is in the form of a will, and declares itself to be her last will and testament, and she had taken extraordinary precaution to examine it. "But the fact that the testator was fully apprised of the testamentary character of the instrument he signed, may be considered in aid of proof tending to establish a publication." (*Gilbert* v. *Knox,* above cited.)

III. The execution of this will was a substantial compliance with the statute. (*Moore* v. *Moore,* 2 *Bradf.* 261. *Hutchings* v. *Cochrane, id.* 295. *Vaughan* v. *Burford,* 3 *id.* 78. *Carle* v. *Underhill, Id.* 101. *Tunison* v. *Tunison,* 4 *id.* 138. *Gilman* v. *Gilman,* 1 *Redf.* 354. *Will of Harder,* 1 *Tucker,* 426. *Hunn* v. *Case,* 1 *Redf.* 307. *Peck* v. *Cary,* 27 *N. Y.* 9.) 1. A will must be subscribed by the testator at the end. This was done. 2. Such subscription must be made by the testator in the presence of each of the attesting witnesses, or be acknowledged by him to have been so made to each of the attesting witnesses. This provision was substantially complied with. These witnesses were requested, by the direction of the testatrix, to come there and witness her will. The will must have been signed by the testatrix about the time this request was made. The will lay upon the table evidently with her signature attached, and although the witnesses do not remember having seen her signature, it was evidently there, and might have been seen by them. They were told in her presence that this was her will, and requested to sign their names and places of residence. The parties were all together for this purpose and no other, and which had been sufficiently expressed to be understood by all

of them, and all was done at the request of the testatrix for the expressed purpose of executing her will. . Had this instrument been a deed, and the testatrix still living, she would have been unquestionably bound by this transaction, upon the same proof found in this case. And if it be said that a will requires more and different proof than a deed to establish it—granted. But upon this point of signing or acknowledging the signature, the only difference that can exist is that the will requires two witnesses, which we have in this case. She took the will away with her after it had been executed, without objection or comment. (*See Hutchings* v. *Cochrane*, 2 *Bradf*. 295.) The attestation clause, which was signed by the witnesses at the time, declares that it was signed, sealed and published by the testatrix in their presence. This is proof that, under all the circumstances, should have weight in this case, and should not be defeated by a simple want of recollection on the part of the witnesses, when one of them declares that he had forgotten all about it, and when told that he had signed Mrs. Bell's will, denied it, and the other that "his recollection of the whole transaction is quite indistinct. Testatrix might have acknowledged the instrument as her will in my presence and I forgotten it." (*Orser* v. *Orser*, 24 *N. Y.* 51; *and see Peck* v. *Cary*, 27 *N. Y.* 24, 25.) 3. "The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament." (*a*.) She had it drawn as her will. (*b*.) She appeared satisfied with the will, and asked the scrivener to get some witnesses. He told her how to execute a will, and she said she understood it. (*c*.) Saxton picked up the paper and said "this is Mrs. Bell's will," and requested the witness to put his name and place of residence. When Canfield came in, the witness Wright asked him if he was a witness, and he said "yes." Then Saxton showed him this will and re-

quested him to sign. (d.) The statements contained in the instrument itself, and in the attestation clause, with the fact the testatrix was fully aware of its contents, and took it into her possession after it was executed, amount to an unequivocal declaration on her part, of the character of the instrument, and cannot fail to be as satisfactory to the mind as any formal declaration. The authorities already cited sufficiently establish that this is a sufficient declaration. (e,) "There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator." The facts and authorities already cited amply establish that this condition was sufficiently complied with.

IV. The surrogate having found in favor of the due execution of the will upon all the facts presented to him, his decision should not be reversed on a question of the weight of evidence.

*By the Court*, PARKER, P. J. We think the evidence of the execution and publication of the will fails to come up to the requirement of the statute. Neither of the subscribing witnesses saw the testatrix sign it, and to neither of them did she acknowledge that she had signed it. And neither of them saw her name upon the instrument. Wright, one of the subscribing witnesses, testified that Saxton, who drew the will, and called him as a witness, said to him, in the presence of the testatrix, holding out to him a paper, so folded that he could not see the place where her signature now appears, "that is Mrs. Bell's will;" "he requested me to put my name there, and place of residence." The testatrix, so far as he recollects, said nothing, and in no way intimated her assent to what was said by Saxton. The other witness was also called in by Saxton, and came in as Wright was going out. He testified, "Mr. Saxton showed this will, and requested me to sign it; think that was all

that was said or done. I signed it. He did not say
what it was. Think Mrs. Bell did not say anything.
Mr. Saxton had told me before I came down stairs from
my office, that he wanted me to come and witness Mrs.
Bell's will. Did not read the clause over my signature.
Did not hear it read; had no knowledge what it contained, more than what Saxton said before I came down
stairs. Think I heard nothing said by Mrs. Bell, or any
one in her presence, *about its being a will.* Don't remember that Mrs. Bell said or did anything while I was
there; she sat on a sofa, when I signed the will—nodded
her head or saluted me when I went in. Think Saxton
said, 'here's the document; sign your name and residence.' Mrs. Bell did not sign her name to the will
while I was there; can't say that her name was signed
to it when I was there; never saw her signature to the
will before to-day; nothing said to her about her signing it; don't remember anything said or done by any
one, at this time, except what I have related." Both
of these witnesses say that the testatrix might have acknowledged the instrument as her will, and they forgotten it, but have no recollection that she did.

Mr. Saxton, who drew the will, was examined as a
witness, and does not remember that he was present
when it was executed; did not see the testatrix sign it,
and only knows that her name was signed to it when
she took it away from his office, when it was executed.

The will was not executed in the manner required by
the statute. The subscription by the testatrix was not
made in the presence of the attesting witnesses, nor of
either of them, neither was it acknowledged by her to
them, or either of them: and to one of the attesting witnesses there was no declaration by the testatrix, or any
one in her presence, that the instrument was her will.
These requirements of the statute were neither formally
nor substantially complied with; and hence the will
was erroneously admitted to probate.

The decree of the surrogate must be reversed with costs, to be paid out of the estate.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, June 3, 1873. *Parker, Boardman* and *J. Potter,* Justices.]